R. M. STANBROUGH, Appellee, v. SUSAN E. DANIELS, Appellant.

Mortgage: RENEWAL: INTERVENING MORTGAGE: PRIORITY OF LIENS: AGENCY. Where a senior mortgage upon real estate, nearly ten years past due, was, at the instance of the agent and attorney of the mortgagee, surrendered and canceled, and a new mortgage accepted upon the same premises and some additional land, as security for substantially the same indebtedness as was secured by the old mortgage, without actual knowledge of certain intervening mortgages upon the same land, and in an action to foreclose said mortgage the priority of the lien of the intervening mortgages was admitted, and the evidence indicated that the land was ample security for the payment of all of said mortgages, *held,* that the interests of said mortgagee and of the holders of the intervening mortgages were not so adverse that said agent was disqualified from acting for said mortgagee in said transaction by reason of his agency for the holders of the intervening mortgages, and that the effect of said transaction was to discharge the lien of the first mortgage.

*Appeal from Delaware District Court.*—HON. J. J. NEY, Judge.

FRIDAY, MAY 19, 1893.

ACTION in equity to foreclose a lien on real estate, and to fix and limit the time within which redemption

therefrom may be made. From a decree in favor of the plaintiff, the defendant, Susan E. Daniels, appeals. *Affirmed*.

*Blair, Dunham & Norris* and *Henderson, Hurd, Daniels & Kiesel*, for appellant.

*Yoran & Arnold* and *Powers, Lacey & Brown*, for appellee.

ROBINSON, C. J.—In the year 1871 the plaintiff loaned to H. P. Chapman one thousand, two hundred and twenty-five dollars, and, to secure its payment, was given a mortgage executed by Chapman on one hundred and twenty acres of land in Delaware county. In the year 1876, Chapman gave to Andrew Huntress a second mortgage on the same land, to secure a loan of one thousand dollars. That mortgage was assigned to Mary E. Kent in the year 1878. On the twenty-second day of March, 1882, Chapman gave to Emma Chase a mortgage on the one hundred and twenty acres of land specified, and on ninety acres in addition, to secure a loan of nine hundred dollars, and on the same day gave to Enos Yoran a mortgage on the two hundred and ten acres mortgaged to Emma Chase, to secure a loan of seven hundred dollars. In the year 1884 the loan made by the plaintiff in the year 1871 was taken up by a new loan of one thousand, three hundred dollars, to secure which Chapman gave to the plaintiff a mortgage on the land included in the Chase and Yoran mortgages. In the year 1886 the second mortgage to the plaintiff was foreclosed by an action in his name. His petition in that case recognized the liens created by the mortgages to Huntress, Chase and Yoran to be superior to his own lien, although the decree did not in terms decide the question of superiority. The action was dismissed as to Emma Chase and Enos Yoran. In March, 1886, a sale of the two

hundred and ten acres was made to the plaintiff, under the decree in his favor. In December, 1886, Westphal, Hinds & Co., junior lienholders, redeemed the premises from that sale, and afterwards assigned the sheriff's certificate to Lucy Daniels. A sheriff's deed for the premises was executed to her under the sale in April, 1887, and in October of that year she conveyed them to the defendant, Susan E. Daniels. In the year 1887 the Huntress, Chase and Yoran mortgages were foreclosed, the premises in controversy were sold to the plaintiff under the decree rendered on the Chase mortgage, and a sheriff's deed therefor was issued to him in September, 1888. He has also become the owner of the decree foreclosing the Huntress mortgage in favor of Mary E. Kent. The only parties defendant in those foreclosure proceedings were Chapman and his wife.

This action was brought to foreclose the lien acquired under the last sale, and to determine the right of redemption conferred by the first sale and the sheriff's deed to Lucy Daniels. Both Lucy and Susan E. Daniels were made parties defendant, but the latter was served with the original notice by publication only, and entered no appearance until after there had been a hearing in the district court, resulting in a decree in favor of the plaintiff, which was affirmed by this court on the appeal of Lucy Daniels. See 77 Iowa, 562. In January, 1890, Susan E. Daniels appeared in the cause, and asked for a retrial so far as her rights were involved. A new trial was granted, and resulted, on the fifth day of December, 1890, in the confirming of the decree rendered on the first trial, excepting that the appellant was given until the first day of March, 1891, in which to make redemption from the sale in controversy, and from the decree, as thus confirmed, she appeals. Questions growing out of her claims to the land were determined in *Stanbrough v.*

*Cook*, 83 Iowa, 705, and in a case between the same parties reported in 86 Iowa, 740.

The appellant contends that in making the new loan by the plaintiff to Chapman, in the year 1884, the mortgage executed in the year 1871 was not discharged, but that the plaintiff had a right to rely upon it as giving a lien paramount to those created by the Huntress, Chase, and Yoran mortgages; that such right passed by virtue of the sheriff's sale, and was acquired by Westphal, Hinds & Co. by means of the redemption they made, and was transferred by them to Lucy Daniels, and by her to the appellant; and that it confers upon her a lien paramount to that under which the plaintiff now claims.

It appears that the plaintiff is, and has been for many years, a resident of the state of New York. In all his transactions with Chapman he acted through Calvin Yoran, who was his agent in making the loans and his attorney in foreclosing his second mortgage. Calvin Yoran also acted for Emma Chase and Enos Yoran in taking the mortgages which were given to them by Chapman, and in foreclosing those mortgages. When the second mortgage to the plaintiff was taken, he executed a release of the first mortgage, which was duly recorded. It is claimed by the appellant that, when the release was executed the plaintiff had no actual knowledge of the three mortgages which preceded the second mortgage to him, and that the same was true when his action was brought for the foreclosure of that mortgage, and when the decree in that case was rendered; that Calvin Yoran was at the same time the agent of Emma Chase and Enos Yoran; that their interests were adverse to the interests of the plaintiff; therefore, that Calvin Yoran was disqualified to act for him in electing to release his first mortgage.

The record does not show that these claims are well founded. It is true that the indebtedness secured

by the first mortgage was substantially all the consideration for the second one, and that the taking of a new note and mortgage for an old debt secured by a mortgage will not operate to discharge the first mortgage, even though it be canceled, unless such was the intent of the parties to the transaction. *Port v. Robbins*, 35 Iowa, 210. It is also true that the duty of an agent to be loyal to his principal is of the first importance, and that the agent will not be permitted to serve at the same time and in the same transaction two principals whose interests are antagonistic, unless, with full knowledge of the facts, they consent that he may do so. Mechem on Agency, sections 454, 455; Wharton on Agency, sections 244, 245, 573. But it is not shown that it was contrary to the interest of the plaintiff to discharge in full the first mortgage in consideration of receiving the new note and mortgage. The debt secured by the first mortgage was then nearly ten years past due. It does not appear that the plaintiff desired to have the money paid. He had been lending money in Iowa, through Calvin Yoran, since the year 1870, and the latter was fully empowered to negotiate and make loans according to his own judgment. Had the old loan been extended, questions in regard to priority and the rights of the respective parties might have arisen between the plaintiff and the holders of the other mortgages. The first mortgage included but one hundred and twenty acres of land, and the new one was given upon two hundred and ten acres. There is no evidence that the premises last mortgaged were not ample security for the note the mortgage was given to secure, in addition to the debts secured by the prior mortgages. On the contrary, the fact that Westphal, Hinds & Co., as junior lienholders, redeemed from the sale made under the decree foreclosing that mortgage, and the further fact, which is shown, that the appellant's grantor purchased the

interest of Westphal, Hinds & Co. as an investment, and that the appellant purchased that interest for the same purpose, indicate that the security was ample. Calvin Yoran decided that it was for the advantage of the plaintiff to make a new loan, and discharge fully the first mortgage, and that was done. The plaintiff has never complained of his action in that respect, and we must conclude from the record that it was within the power conferred upon him, and justified by the condition of affairs as they then existed. The petition of the plaintiff filed in the action to foreclose his second mortgage made no claim to any interest derived from the first mortgage, and showed clearly that he did not claim any right paramount to the liens created by the Huntress, Chase, and Yoran mortgages. Therefore, in purchasing the title conveyed by the sheriff's deed, the appellant was not only not led to believe from anything which the plaintiff had done that she was acquiring a right under the first mortgage, but she was chargeable with notice that such was not the case. We find that the interest she acquired is junior to the decree of foreclosure in favor of Mary E. Kent, now owned by the plaintiff, and that it is also junior to the title he acquired by virtue of the sale and sheriff's deed made under the decree which foreclosed the Chase mortgage.

The conclusions we have announced make the determination of several questions discussed by counsel unnecessary.

The decree of the district court is AFFIRMED.